UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIAN DAVID PALACIOS OBREGON, <br><br> Petitioner(s), <br><br> v. <br><br> PAMELA BONDI, <br><br> Respondent(s). | CASE NO. C26-0484-KKE <br><br> ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION |

This matter comes before the Court on Petitioner's emergency motion for immediate release, which the Court construes as a motion for temporary restraining order ("TRO"), and his motion to expedite consideration of his habeas petition. Dkt. Nos. 9, 10. For the following reasons, the Court will deny petitioner's TRO motion without prejudice, deny the motion to expedite as moot, and lift the provisional relief it issued earlier barring Petitioner's transfer or removal.

## I.    BACKGROUND

Petitioner is a national and citizen of Colombia currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 20 at 5–6. Petitioner has been in custody since December 1, 2024, when he was detained upon crossing the United States border from Canada. *Id.* at 4; Dkt. No. 1 ¶ 47. On August 21, 2025, he was ordered removed and granted withholding of removal to Colombia. Dkt. No. 20 at 4–5, 25.

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 1

On February 13, 2026, Petitioner, initially proceeding *pro se*, filed his original habeas petition (Dkt. No. 11), the pending TRO motion (Dkt. No. 9), and the motion to expedite consideration (Dkt. No. 10). Since then, Petitioner has been appointed and obtained counsel from the Office of the Federal Public Defender. *See* Dkt. Nos. 16, 17. Respondent filed an opposition to Petitioner's TRO motion and the motion to expedite. Dkt. No. 18. Both motions are now ripe for consideration.

Petitioner's TRO motion seeks immediate release based on Petitioner's medical condition, Heliobacter Pylori ("H. Pylori"), to which he claims officials at NWIPC have been deliberately indifferent. Dkt. No. 9 at 1. Petitioner contends that he has suffered severe abdominal pain, vomiting, fecal incontinence, and gastrointestinal bleeding; requiring him to wear adult diapers, causing distress, and harming his dignity. *Id.* at 1–2. He contends that he has been denied immediate access to showers and is required to shower with over a hundred other detainees, "making adequate hygiene impossible." *Id.* at 2. And he contends that NWIPC does not provide qualified medical staff overnight. *Id.* at 2.

Respondent filed a declaration by NWIPC's clinic director, Dr. Eddie Wang, responding to Petitioner's claims and providing additional detail about his condition and treatment. Dkt. No. 19. Dr. Wang states that Petitioner was first seen for concerns about abdominal pain, incontinence, and gastrointestinal bleeding in January 2025, not long after he was initially detained. *Id.* ¶ 8. At that time, however, Petitioner stated that the current episode had subsided and he did not currently need treatment. *Id.* A few weeks later, however, Petitioner complained again of recurring diarrhea, including bleeding, as well as vomiting. *Id.* ¶ 9. NWIPC medical staff ordered a stool blood test, which returned negative, and an H. Pylori test, which returned positive. *Id.* ¶ 9–10. Staff then began treating Petitioner's H. Pylori with antibiotics and scheduled an ultrasound for April 2025. *Id.* ¶ 10.

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 2

Days after staring his antibiotic treatment, Petitioner was seen again for complaints of continuing abdominal pain, which Dr. Wang states is "typical with [an] H. Pylori treatment regimen." *Id.* ¶ 13. NWIPC medical staff placed a "GI referral"—presumably a referral to a gastroenterologist—and scheduled Petitioner for a Computed Tomography ("CT") scan in May 2025. *Id.* Because a CT scan provides greater evaluative detail than an ultrasound, Dr. Wang states that the previously scheduled ultrasound was cancelled. *Id.*

Between the end of February and early March 2025, NWIPC staff saw Petitioner several more times for complaints of vomiting with blood, dizziness, abdominal pain, and heartburn. *Id.* ¶¶ 15–18. Dr. Wang's declaration does not reflect any treatments administered during these visits, except prescribing Maalox for the heartburn, but states that Petitioner's vital signs and abdominal exams were normal. *Id.*

On March 12, 2025, Petitioner completed his first regimen of H. Pylori treatment and NWIPC medical staff ordered a retest to ensure the treatment's efficacy. *Id.* ¶ 19. According to Dr. Wang, Petitioner had been given adult diapers, but his incontinence resolved around this time. *Id.* Days later, however, Petitioner again reported abdominal pain and was seen by medical staff (no treatment is reported, though, by that time, the CT scan was scheduled in a month and a half). *Id.* ¶ 20. In late March, Petitioner's H. Pylori retest results were returned, showing that the treatment had failed and that Petitioner remained positive for the infection. *Id.* ¶ 21. Accordingly, staff initiated a second round of treatment on April 4, 2025. *Id.* ¶ 22.

According to Dr. Wang, medical staff followed up two weeks later, and Petitioner indicated he was doing better and reported that he still had intermittent diarrhea but no blood. *Id.* ¶ 23. His CT scan was performed in early May, as scheduled, but the findings "were normal and did not display any abnormalities." *Id.* ¶ 24. Shortly thereafter, Petitioner had his appointment with a gastroenterologist, who reviewed Petitioner's labs and CT scan with him. *Id.* ¶ 25. The

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 3

gastroenterologist recommended an esophagogastroduodenoscopy ("EGD") and a colonoscopy. *Id.* Due to "administrative delay[,]" the referral was not placed until July 16—two months later—and was then approved and scheduled for September 3, 2025. *Id.* A few weeks later, medical staff followed up with Petitioner, who, according to Dr. Wang, reported that his abdominal symptoms had improved over the last several weeks. *Id.* ¶ 26.

Petitioner did not end up having his EGD and colonoscopy as scheduled. According to Dr. Wang, this is because less than a week earlier, Petitioner went on hunger strike and declined to call it off after medical staff informed him that the procedures—which required sedation—could not be safely preformed unless he regained his strength. *Id.* ¶¶ 27–30. Petitioner apparently ended the strike at some point, and the procedures were rescheduled for February 26, 2026—after briefing on the TRO was complete. *Id.* ¶ 32.

In October 2025, Petitioner again reported intermittent abdominal pain and was prescribed antibiotics and abdominal cramping medication. *Id.* Nearly a month later, he was seen again for reports of recurring diarrhea with blood and abdominal pain, but Petitioner reportedly stated that the symptoms "were flaring" but "got better[.]" *Id.* ¶ 33. No treatment is reported for this visit. *Id.* Two weeks later, medical staff followed up, and Petitioner reported his incontinence had returned and that he had "recurring abdominal symptoms." *Id.* ¶ 34. Staff conducted a stool test, which returned negative for infections. *Id.* But just under two months later, Petitioner again returned to medical staff complaining of recurring abdominal symptoms, was retested for H. Pylori, and his test returned positive. *Id.* ¶¶ 35–36. Accordingly, staff initiated H. Pylori treatment for a third time. *Id.* ¶ 36. While Petitioner's EGD and colonoscopy were scheduled for February 26, 2026, the record does not reflect whether the procedures were completed as planned or their results.

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 4

## II.    DISCUSSION

### A.    Motion for a Temporary Restraining Order

The legal standard governing TROs is "substantially identical" to the standard governing preliminary injunctions. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Parties seeking a TRO must show: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction serves the public interest. *Id.* at 20.

While the Court is sympathetic to the pain and psychological hardships attendant with Petitioner's condition—and has concerns about the level of care and accommodations provided at NWIPC—the record does not currently support Petitioner's entitlement to the relief requested. Courts have held that a noncitizen's conditions of confinement can be relevant to whether their confinement has become punitive in violation of due process. *See Doe v. Becerra*, 723 F. Supp. 3d 688, 691 n.1 (N.D. Cal. 2024). Indeed, just weeks ago, a court in this District held that the inadequacy of a noncitizen's medical care at NWIPC—including delays in treatment that led to partial amputations of his foot—demonstrated "a pattern of failures" that rendered the detention unconstitutionally excessive in relation to the purposes of immigration detention. *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *8–12 (W.D. Wash. Feb. 13, 2026).

Petitioner's claims, however, are better addressed in the context of adjudicating his amended habeas petition than on a motion for TRO—where Petitioner must show both imminent and irreparable harm and "that the law and facts clearly favor [his] position[.]" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis omitted) (setting forth standard for a mandatory

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 5

injunction). While Petitioner is rightfully frustrated by the slow progress in treating his H. Pylori infection, the record at this stage does not support Petitioner's contention that NWIPC staff have shown deliberate indifference to his situation. The record indicates that staff have regularly seen Petitioner regarding his symptoms; have followed up with him after appointments to check on the progression of symptoms; have initiated testing, retesting, and treatment for his H. Pylori; and have scheduled referrals with a gastroenterologist as well as the recommended diagnostic procedures— i.e., a CT, EGD, and colonoscopy.

The Court is concerned that the record also reflects several potential gaps in care. For instance, Respondent provides no justification for the two-month holdup in scheduling Petitioner's EGD and colonoscopy, which, according to Dr. Wang, was simply due to "administrative delay in obtaining office notes[.]" Dkt. No. 19 ¶ 25. Further, Dr. Wang does not respond at all to Petitioner's concern that his limited access to showers and the requirement that he shower with many other detainees has prevented him from being able to perform adequate hygiene. Dkt. No. 9 at 2. The record also describes many visits by Petitioner to NWIPC's medical staff for which there is no listed treatment or other action taken to alleviate Petitioner's recurring abdominal symptoms.

Nevertheless, the Court cannot determine, at this stage, whether these potential gaps indicate an inadequate level of care or whether they rise to the level of a constitutional violation. As it stands, the record as a whole reflects ongoing—albeit not always successful—efforts by NWIPC's medical staff to treat a persistent infection whose symptoms seemed to "wax and wan[e]" over time. Dkt. No. 19 ¶ 33. Petitioner is apparently currently receiving, or has recently completed, a third round of antibiotic treatment for H. Pylori and was scheduled to have his EGD and colonoscopy on February 26, which will hopefully assist his medical team in charting the next steps for his care. *Id.* ¶¶ 36, 39. On this record, the Court cannot find that Petitioner has shown a

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 6

likelihood of irreparable harm absent an order requiring his immediate release or that the law and facts clearly support his entitlement to such relief.

Accordingly, the Court will deny Petitioner's TRO motion without prejudice and will adjudicate his amended petition, which is currently being briefed by the parties, in the ordinary course.

**B.      Provisional Relief Barring Transfer**

Subject to the notice requirement in the Court's scheduling order (Dkt. No. 4), the Court will also lift the provisional relief it previously entered prohibiting Respondent or Immigration and Customs Enforcement ("ICE") from removing or transferring Petitioner without further order of the Court.  Dkt. No. 8.  On the evening of February 12, 2026, the Court issued this relief after receiving a call from Petitioner indicating that he had been told ICE intended to remove him the next morning.  *Id.*  The next day, ICE deportation officer Gilbert Bolof filed a declaration clarifying that, while Petitioner had been informed that ICE intended to remove him to Canada, it had not said that it would remove him the next morning.  Dkt. No. 14 at 2–3.  Bolof stated that Petitioner had expressed a fear of removal to Canada, is currently undergoing a reasonable fear screening process with United States Citizenship and Immigration Services, and will not be removed until that process is complete.  *Id.* ¶¶ 9, 11.  He also confirmed that ICE will abide by the scheduling order's requirement that ICE may not remove Petitioner without providing 48-hours' notice (or 72 hours, for weekends and holidays).  *Id.* ¶ 10.  And the United States Attorney's Office has also previously confirmed that ICE will comply this order.  Dkt. No. 5 at 2.

Accordingly, for the reasons set forth in the Court's previous order denying Petitioner's first TRO motion (Dkt. No. 7), the Court will lift the provisional relief issued in the Court's order of February 12, 2026 (Dkt. No. 8).

**C.      Motion to Expedite**

Finally, the Court will deny Petitioner's motion for expedited consideration of his habeas petition (Dkt. No. 10) as moot because the parties have subsequently stipulated to an expedited briefing schedule on the amended petition (Dkt. Nos. 22, 23).

### III.   CONCLUSION

Accordingly, the Court ORDERS as follows:

(1) Petitioner's motion for a temporary restraining order (Dkt. No. 9) is DENIED without prejudice;

(2) Petitioner's motion to expedite consideration of habeas corpus petition (Dkt. No. 10) is DENIED as moot;

(3) The provisional relief issued in the Court's order of February 12, 2026 (Dkt. No. 8) prohibiting Respondent or ICE from removing Petitioner from the United States or this jurisdiction—i.e., the Western District of Washington—without further order of this Court is LIFTED.

Dated this 2nd day of March, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON MOTIONS FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED CONSIDERATION - 8