UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIAN DAVID PALACIOS OBREGON,<br><br>Petitioner(s),<br><br>v.<br><br>TODD BLANCHE,<br><br>Respondent(s). | CASE NO. C26-0484-KKE<br><br>ORDER ON HABEAS PETITION |

Petitioner Julian David Palacios Obregon, proceeding through counsel, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 20. Petitioner is a Colombian national and legal resident of Canada currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He challenges the legality of his ongoing confinement and seeks adjacent relief related to his impending removal to Canada. For the following reasons, the Court finds that Petitioner has not shown that he is unlawfully detained and therefore denies his request for immediate release. However, the Court also finds, consistent with well-established authority from this District, that due process entitles Petitioner to notice and an opportunity to have his fear of removal to Canada (or any other third country) heard by an immigration judge in reopened removal proceedings prior to being removed to any country not specified in his final order of removal.

Accordingly, the Court will grant in part and deny in part Petitioner's amended petition.

ORDER ON HABEAS PETITION - 1

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a national and citizen of Colombia currently detained at NWIPC.  Dkt. No. 20 at 5–6.  In Colombia, Petitioner was engaged in various social and political causes in his community. *Id.* at 7–8.  According to his operative petition, in 2018, Petitioner received the "Best Leaders of Colombia" award after working on an initiative to transition members of criminal groups into gainful employment or education.  *Id.*  Because of his activism against criminal organizations, Petitioner became the target of threats and violence, including multiple assassination attempts. *Id.* at 8.  When Petitioner began investigating and reporting on corruption by members of Colombia's Congress and other government officials, he received additional death threats and experienced several attempts on his life.  Dkt. No. 1 ¶¶ 30–42.

Petitioner fled Colombia in January 2024, after being warned of another assassination plot and plans to harm his family.  *Id.* ¶ 42.  He initially arrived in Ecuador, where he alleges three police officers beat him for unknown reasons. *Id.* ¶ 43.  Later that year, Petitioner claims that two men on a motorcycle attacked him, shooting him multiple times in the legs.  *Id.* ¶ 44.  He also claims that, on three different occasions, men on motorcycles had asked the receptionist at his hotel whether Petitioner was staying there.  *Id.*  Fearing that he was in imminent danger if he remained in Ecuador, Petitioner obtained a visa to Canada, where he resettled in August 2024.  *Id.*

Petitioner obtained legal residency in Canada.  Dkt. No. 20 at 10, Dkt. No. 14 ¶ 6.  While living there, Petitioner claims he continued to face threats related to his activism in Colombia. Dkt. No. 20 at 8.  In particular, he claims that, one day, another Colombian recognized Petitioner, followed him home, and posted a video online that went viral, leading to multiple online threats. *Id.*; Dkt. No. 1 ¶ 45.  Two days later, Petitioner claims that "someone broke into [his] apartment and painted threats on the windows and walls."  Dkt. No. 1 ¶ 45.  When he complained to the

ORDER ON HABEAS PETITION - 2

police, he claims they told him nothing could be done.  Dkt. No. 20 at 9.  Fearing he would not be safe in Canada, Petitioner decided to leave for the United States, where his brothers had previously been granted asylum.  *Id.*; Dkt. No. 1 ¶¶ 44, 47.

On December 1, 2024, Petitioner arrived at the Peace Arch port of entry and presented himself to Customs and Border Protection ("CBP"), explaining he intended to apply for asylum. Dkt. No. 28-1 at 3.  Petitioner expressed fear of returning to either Colombia or Canada, and CBP detained him and transported him to NWIPC, where he has been in custody ever since.  *Id.*

On August 21, 2025, an immigration judge ("IJ") ordered Petitioner removed to Colombia but granted him withholding of removal to that country. Dkt. No. 20 at 4–5, 25; Dkt. No. 28-2. Immigration and Customs Enforcement ("ICE") subsequently contacted Canada Border Services Agency, which informed ICE of Petitioner's legal residency in Canada and, later, stated it would accept Petitioner's return to Canada.  Dkt. No. 14 ¶ 6, Dkt. No. 32-3 at 2, Dkt. No. 32-4 at 2.  ICE served Petitioner with a third country removal notice indicating it intended to remove him to Canada—a "third county" despite his residency there because it was not listed on his removal order. Dkt. No. 14 ¶ 8.  Petitioner again expressed fear of returning to Canada and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a screening interview to assess his eligibility for protection from removal to Canada.  *Id.* ¶ 9.

USCIS interviewed Petitioner for about four and a half hours over two days, during which he was represented by a Department of Justice accredited representative.  Dkt. No. 30-1 ¶¶ 2–3. USCIS found that Petitioner was credible but nevertheless determined he "did not establish that it is more likely than not that he will be persecuted on account of a protected ground or tortured in

ORDER ON HABEAS PETITION - 3

Canada." Dkt. No. 34-2 at 3–4.  The Government[1] initially stated that ICE was awaiting a travel document from Canada to effectuate his removal (Dkt. No. 25 at 10–11, Dkt. No. 26 ¶ 6) but has more recently informed Petitioner's counsel that Canada is not issuing a travel document but has confirmed it "will receive him into Canada" nonetheless (Dkt. No. 32-2 at 5).

While detained, Petitioner has sought medical treatment for gastrointestinal symptoms potentially related to a stomach infection called Heliobacter Pylori ("H. Pylori").  Dkt. No. 20 at 3.  The Court previously recounted his condition and treatment history at NWIPC in its earlier order on Petitioner's motion for a temporary restraining order ("TRO"):

> [During his detention,] Petitioner contends that he has suffered severe abdominal pain, vomiting, fecal incontinence, and gastrointestinal bleeding; requiring him to wear adult diapers, causing distress, and harming his dignity.  [Dkt. No. 9] at 1–2. He contends that he has been denied immediate access to showers and is required to shower with over a hundred other detainees, "making adequate hygiene impossible."  *Id.* at 2.  And he contends that NWIPC does not provide qualified medical staff overnight.  *Id.* at 2.

> Respondent filed a declaration by NWIPC's clinic director, Dr. Eddie Wang, responding to Petitioner's claims and providing additional detail about his condition and treatment.  Dkt. No. 19.  Dr. Wang states that Petitioner was first seen for concerns about abdominal pain, incontinence, and gastrointestinal bleeding in January 2025, not long after he was initially detained.  *Id.* ¶ 8.  At that time, however, Petitioner stated that the current episode had subsided and he did not currently need treatment.  *Id.*  A few weeks later, however, Petitioner complained again of recurring diarrhea, including bleeding, as well as vomiting.  *Id.* ¶ 9. NWIPC medical staff ordered a stool blood test, which returned negative, and an H. Pylori test, which returned positive.  *Id.* ¶ 9–10.  Staff then began treating Petitioner's H. Pylori with antibiotics and scheduled an ultrasound for April 2025. *Id.* ¶ 10.

> Days after staring his antibiotic treatment, Petitioner was seen again for complaints of continuing abdominal pain, which Dr. Wang states is "typical with [an] H. Pylori treatment regimen."  *Id.* ¶ 13.  NWIPC medical staff placed a "GI referral"— presumably a referral to a gastroenterologist—and scheduled Petitioner for a Computed Tomography ("CT") scan in May 2025.  *Id.*  Because a CT scan provides

---

[1] This order refers to Respondents Todd Blanche, Markwayne Mullin, and Drew H. Bostock generally as "the Government."  Each of these three respondents is substituted for their predecessor pursuant to Federal Rule of Civil Procedure 25(d).

ORDER ON HABEAS PETITION - 4

greater evaluative detail than an ultrasound, Dr. Wang states that the previously scheduled ultrasound was cancelled. *Id.*

Between the end of February and early March 2025, NWIPC staff saw Petitioner several more times for complaints of vomiting with blood, dizziness, abdominal pain, and heartburn. *Id.* ¶¶ 15–18. Dr. Wang's declaration does not reflect any treatments administered during these visits, except prescribing Maalox for the heartburn, but states that Petitioner's vital signs and abdominal exams were normal. *Id.*

On March 12, 2025, Petitioner completed his first regimen of H. Pylori treatment and NWIPC medical staff ordered a retest to ensure the treatment's efficacy. *Id.* ¶ 19. According to Dr. Wang, Petitioner had been given adult diapers, but his incontinence resolved around this time. *Id.* Days later, however, Petitioner again reported abdominal pain and was seen by medical staff (no treatment is reported, though, by that time, the CT scan was scheduled in a month and a half). *Id.* ¶ 20. In late March, Petitioner's H. Pylori retest results were returned, showing that the treatment had failed and that Petitioner remained positive for the infection. *Id.* ¶ 21. Accordingly, staff initiated a second round of treatment on April 4, 2025. *Id.* ¶ 22.

According to Dr. Wang, medical staff followed up two weeks later, and Petitioner indicated he was doing better and reported that he still had intermittent diarrhea but no blood. *Id.* ¶ 23. His CT scan was performed in early May, as scheduled, but the findings "were normal and did not display any abnormalities." *Id.* ¶ 24. Shortly thereafter, Petitioner had his appointment with a gastroenterologist, who reviewed Petitioner's labs and CT scan with him. *Id.* ¶ 25. The gastroenterologist recommended an esophagogastroduodenoscopy ("EGD") and a colonoscopy. *Id.* Due to "administrative delay[,]" the referral was not placed until July 16—two months later—and was then approved and scheduled for September 3, 2025. *Id.* A few weeks later, medical staff followed up with Petitioner, who, according to Dr. Wang, reported that his abdominal symptoms had improved over the last several weeks. *Id.* ¶ 26.

Petitioner did not end up having his EGD and colonoscopy as scheduled. According to Dr. Wang, this is because less than a week earlier, Petitioner went on hunger strike and declined to call it off after medical staff informed him that the procedures—which required sedation—could not be safely preformed unless he regained his strength. *Id.* ¶¶ 27–30. Petitioner apparently ended the strike at some point, and the procedures were rescheduled for February 26, 2026—after briefing on the TRO was complete. *Id.* ¶ 32.

In October 2025, Petitioner again reported intermittent abdominal pain and was prescribed antibiotics and abdominal cramping medication. *Id.* Nearly a month later, he was seen again for reports of recurring diarrhea with blood and abdominal pain, but Petitioner reportedly stated that the symptoms "were flaring" but "got better[.]" *Id.* ¶ 33. No treatment is reported for this visit. *Id.* Two weeks later, medical staff followed up, and Petitioner reported his incontinence had returned

ORDER ON HABEAS PETITION - 5

and that he had "recurring abdominal symptoms." *Id.* ¶ 34. Staff conducted a stool test, which returned negative for infections. *Id.* But just under two months later, Petitioner again returned to medical staff complaining of recurring abdominal symptoms, was retested for H. Pylori, and his test returned positive. *Id.* ¶¶ 35–36. Accordingly, staff initiated H. Pylori treatment for a third time. *Id.* ¶ 36.

Dkt. No. 24 at 2–4.

On February 26, 2026, Petitioner attended his rescheduled EGD and colonoscopy appointment but was, again, unable to receive a colonoscopy. Dkt. No. 27 ¶ 4. Dr. Wang states this was "due to improper bowel preparation." Dkt. No. 27 ¶ 4. According to Dr. Wang, "Petitioner followed the bowel preparation regimen as ordered" but "[d]uring the preparation regimen, petitioner vomited some of the GI contents[,]" which was "deemed … improper preparation for the colonoscopy." *Id.* Petitioner, however, contends that NWIPC failed to take steps to ensure he was given a low-fiber diet in the days leading up to the procedure, failed to ensure he was placed on a liquid diet for a full day, and was only given a brochure in English detailing these necessary preparations hours before the procedure. Dkt. No. 34 at 2–3; *see also* Dkt. No. 34-4 ¶¶ 2–4, 8–10. Petitioner claims that he was merely given a liquid to consume and told that it would suffice notwithstanding NWIPC's failure to provide the necessary diet ahead of time. Dkt. No. 34 at 2–3. Petitioner received an EGD, the results from which are not in the record. Dkt. No. 27 ¶ 4.

On March 25, the Court held a status conference at which the Government provided additional details about Petitioner's treatment plan. The Government's counsel stated that NWIPC medical staff believe Petitioner has a treatment-resistant subset of H. Pylori and have therefore ordered specialized medication for eradicating this strain. Petitioner will undergo a regimen of treatment once this medication arrives and will be retested weeks after that is complete to determine if he remains positive for the infection. Counsel also shared that Petitioner's colonoscopy has been rescheduled for May 12, 2026. Prior to the procedure, ICE intends to

ORDER ON HABEAS PETITION - 6

schedule an appointment for Petitioner with a registered nurse and a translator, during which the nurse will discuss the necessary preparation for the colonoscopy with Petitioner. Although, according to counsel, NWIPC typically serves a low fiber diet, counsel expressed that ICE was willing to ensure Petitioner is given such a diet in the days leading up to his procedure, as recommended by his medical team. Counsel also indicated that, before the May 12 procedure, the facility intends to move Petitioner to medical segregation sooner to ensure that he is able to initiate an all-liquid diet at least 24 hours in advance of the procedure.

**B.    Procedural History**

Petitioner, initially proceeding *pro se*, filed his original habeas petition on February 13, 2026. Dkt. No. 11. Since then, Petitioner has been appointed and obtained counsel from the Office of the Federal Public Defender. *See* Dkt. Nos. 16, 17. The Court has denied two TRO motions and granted or provisionally granted two others. Dkt. Nos. 7, 8, 24, 33. Most recently, the Court provisionally granted Petitioner's TRO motion and enjoined his transfer from this District pending complete briefing on the TRO motion.[2] Dkt. No. 33 at 4. Petitioner's amended petition (Dkt. No. 20) is now fully briefed and ripe for the Court's consideration (*see* Dkt. Nos. 25, 34).

## II.    DISCUSSION

**A.    Legal Standard**

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to

---

[2] The Government never filed an opposition to the TRO motion, so the provisional relief remains in place.

ORDER ON HABEAS PETITION - 7

immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B.      Punitive Confinement**

Petitioner contends that the inadequacy of his medical care at NWIPC renders the conditions of his confinement punitive in violation of due process.  Dkt. No. 34 at 1–5.  The Government responds that challenges to conditions of confinement are not cognizable in habeas and that Petitioner's conditions are, in any event, constitutional.  Dkt. No. 225 at 14–18.

The parties agree that the Fifth Amendment prohibits conditions of civil detention that "amount to punishment of the detainee."  Dkt. No. 25 at 16 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); Dkt. No. 34 at 4.  This is because civil detainees, such as noncitizens awaiting removal, have not been adjudicated guilty of a punishable crime "in accordance with due process of law." *Bell*, 441 U.S. at 535–36; *see also Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (holding that "imprisonment at hard labor" of noncitizens subject to deportation "without a trial by jury" violated due process).  "Whether civil detention is unconstitutionally punitive … is a question that clearly sounds in habeas because it goes directly to the legality of the detention itself."  *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *9 (W.D. Wash. Feb. 13, 2026); *see also Doe v. Becerra*, 723 F. Supp. 3d 688, 691 n.1 (N.D. Cal. 2024) (distinguishing *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023), which involved a challenge to conditions of confinement by criminally convicted prisoners, from challenges to punitive detention by civil detainees, which may be brought in habeas).

The parties also agree on the applicable test for punitive confinement, which considers whether a condition is either "intended to punish" or "excessive in relation to its non-punitive purpose." *Jones v. Blanas*, 393 F.3d 918, 933–34 (9th Cir. 2004) (citation modified); *see also* Dkt. No. 25 at 16–17 ("A petitioner may show punishment through an express intent to punish or a

ORDER ON HABEAS PETITION - 8

condition that is not 'reasonably related to a legitimate governmental objective.'") (quoting *Bell*, 441 U.S. at 538–39). Petitioner does not argue that the Government intends to punish him but, rather, that the inadequacy of his medical care renders his confinement excessive in relation to the purpose of effectuating his removal. Dkt. No. 34 at 5.

Having reviewed the record, the Court cannot conclude that Petitioner's care at NWIPC has been so deficient as to make his confinement punitive in violation of due process. Petitioner compares his situation to *Sorio*, in which the court found "the unique facts" and "extreme consequences" in that case—involving "a pattern of failures of care" that resulted in the partial amputation of a detainee's foot—so excessive as to render the conditions of the detention unconstitutionally punitive. 2026 WL 413530, at *10–12; Dkt. No. 34 at 4. In *Sorio*, the facility's medical staff repeatedly ignored the detainee's requests for care, refused to provide needed antibiotics, continued to ignore his pleas as his condition worsened, and treated him with medication for the wrong condition, possibly exacerbating his condition. 2026 WL 413530, at *10. Having entered detention in good health, the detainee had after eight months suffered "two partial foot amputations"; developed "ulcerative colitis …, acute blood loss anemia, [and] a kidney injury"; and experienced "dramatic unintended weight loss." *Id.* at *1.

By contrast, the record here reflects that Petitioner's medical team has made consistent, albeit not always successful, efforts to treat what has proven to be a treatment-resistant condition with symptoms that "wax and wan[e]" over time. Dkt. No. 19 ¶ 33. Medical staff regularly saw Petitioner regarding his symptoms; followed up with him after appointments to check on the progression of symptoms; initiated testing, retesting, and treatment for his H. Pylori; and scheduled referrals with a gastroenterologist as well as the recommended diagnostic procedures—i.e., a CT, EGD, and colonoscopy. The record also indicates that, at least for a time, NWIPC accommodated Petitioner's request to shower alone to ensure he could adequately perform hygiene in privacy.

ORDER ON HABEAS PETITION - 9

Dkt. No. 11-1 at 259, 272.  NWIPC medical staff have taken steps to initiate Petitioner's *fourth* round of treatment for H. Pylori, this time ordering medication specifically intended for treatment-resistant strains.

Petitioner's traverse argues that NWIPC failed to take adequate steps to prepare him for his February 26 colonoscopy, including failing to put him on a low-fiber diet or an all-liquid diet for the requisite periods before the procedure.  NWIPC has now rescheduled his colonoscopy and intends to take additional steps to ensure he is prepared for the procedure in May.  The Court cannot find that the resulting delay renders Petitioner's detention excessive in relation to its non-punitive purposes.  Petitioner cites no authority other than *Sorio* where inadequate medical care was found to render a detainee's conditions of civil confinement punitive; and the record here simply does not reflect the sort of "objectively unreasonable failures of care" that warranted relief in that case.  2026 WL 413530, at *10 (recounting a pattern of failures that "more likely than not resulted in [the detainee's] permanent disability").  Moreover, the record contains no evidence comparing the conditions of confinement at NWIPC to those experienced by individuals in criminal confinement, which Ninth Circuit caselaw suggests is important in evaluating claims of punitive of civil confinement.  *See Jones*, 393 F.3d at 931–35 (reversing dismissal of punitive confinement claims where civil detainee demonstrated his conditions of confinement were, in some respects, "substantially more restrictive than confinement in the Main Jail"); *King v. Cnty. of L.A.*, 885 F.3d 548, 556–58 (9th Cir. 2018) (finding conditions of confinement punitive where civil detainee was housed in county jail under effectively the same conditions as criminal detainees); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 649 (9th Cir. 2021) (rejecting punitive confinement claim where the "record lack[ed] evidence from which to draw any relevant comparisons between the overall conditions of confinement of ICE detainees as compared to those in criminal custody").

ORDER ON HABEAS PETITION - 10

With no record comparing Petitioner's conditions of confinement to those of a penal institution and because Petitioner has been receiving ongoing medical care, as described above, Petitioner has not shown that he is entitled to release based on the conditions at NWIPC.

## C.    Indefinite Detention

Next, Petitioner argues he is entitled to release because his removal to Canada is not reasonably foreseeable and his detention has thus become indefinite.  Dkt. No. 20 at 25–26, Dkt. No. 34 at 5–7.  Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682.  During the 90-day removal period, the Government "shall detain" the noncitizen.  8 U.S.C. § 1231(a)(2)(A).  Once the 90-day removal period ends, the Government may continue to detain certain noncitizens.  *Id.* § 1231(a)(6).  "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]"  *Id.*

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  *Zadvydas*, 533 U.S. at 699.  "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause."  *Id.* at 690.  Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  The "presumptively reasonable" period for detention following a removal order is six months.  *Id.* at 701.

ORDER ON HABEAS PETITION - 11

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Having been detained for over six months, Petitioner's detention is no longer "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. However, because the Government notified Petitioner on February 12, 2026, that it intends to remove him to Canada, where he is a legal resident, and Canada Border Services Agency has informed ICE it will accept Petitioner's return (Dkt. No. 14 ¶ 6, Dkt. No. 32-3 at 2, Dkt. No. 32-4 at 2), Petitioner has not met his initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Indeed, it appears that ICE would have removed Petitioner to Canada on March 9, 2026, when his guards began driving him toward the border before turning around, apparently upon learning of the Court's order provisionally barring his transfer. Dkt. No. 34 at 13. Under these circumstances, it appears that Petitioner's removal is imminent, and he is thus not entitled to release under *Zadvydas* at this time.[3]

## D.    Third Country Removal

In addition to his release, Petitioner seeks injunctive relief related to his potential removal to a third country (i.e., Canada) under the Fifth Amendment to the United States Constitution, 8 U.S.C. § 1231, the Convention Against Torture, implementing regulations of the Immigration and Nationality Act, and the Administrative Procedure Act. Dkt. No. 20 at 28–31. The Court will

---

[3] Nothing in this order prevents Petitioner from renewing his request for relief in the event that he is not ultimately removed as intended.

grant some of Petitioner's requested injunctive relief, after addressing its jurisdiction to hear Petitioner's claims.

1. Petitioner's membership in the *D.V.D.* class does not divest the Court of jurisdiction.

The Government argues that the Court "should decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity" because he is a member of the certified plaintiff class in *D.V.D v. Department of Homeland Security*, Civ. A. No. 25-10676 (D. Mass.). Dkt. No. 25 at 11–13. At the same time, the Government acknowledges that this Court and others in this District have repeatedly rejected this argument. *Id.* at 13 (citing *Emara v. Bondi*, No. C26-0116-KKE, 2026 WL 266067, at *3 (W.D. Wash. Feb. 2, 2026)). The Court rejects it again here.

As it has in previous cases, the Government relies on *Pride v. Correa*, in which the Ninth Circuit held that, when "the complainant is a member in a class action seeking the same relief[,]" a court "may dismiss those portions of the complaint which duplicate the class action's allegations and prayer for relief." 719 F.3d 1130, 1133 (9th Cir. 2013) (citation modified) (quoting *Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979)). But the Ninth Circuit went on to explain that "a district court may not 'dismiss[] those allegations … which go beyond the allegations and relief prayed for in [the class action]." *Id.* (first and last alterations in original) (quoting *Crawford*, 599 F.2d at 893). Here, dismissal would be inappropriate because Petitioner's individual claims seek relief he is unable or unlikely to obtain in the *D.V.D.* litigation.

Petitioner's due process claim is also not identical to the claims in the *D.V.D.* class action because he seeks a meaningful opportunity to seek withholding of removal in the event he fears persecution in a designated third country—a claim not at issue in *D.V.D*. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 729–30 (W.D. Wash. 2025); *see also Kumar v. Wamsley*, No. C25-2055-KKE,

ORDER ON HABEAS PETITION - 13

2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025); *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *6 (W.D. Wash. Dec. 19, 2025).

And as the Government acknowledges, dismissal of individual claims that duplicate a class action is not required, rather, it is "within the court's discretion" and grounded in "its inherent power to control its own docket." Dkt. No. 25 at 12 (citing *Crawford*, 599 F.2d at 893). As the Ninth Circuit explained in *Crawford*, "[a] court *may choose* not to exercise its jurisdiction when another court having jurisdiction over the same matter has entertained it and can achieve the same result." 599 F.2d at 893. Here, ample authority supports the Court's exercise of jurisdiction over Petitioner's third-country removal claims.

Finally, the Government contends that Petitioner's petition should be dismissed because "[t]he Supreme Court's stay of the preliminary injunction" in *D.V.D.* is "precedent and … binding" on Petitioner as a member of the *D.V.D.* class. Dkt. No. 13 at 13. For the reasons thoroughly explained in *Nguyen*, and numerous other cases from this district and Circuit, the Court disagrees. *See* 796 F. Supp. 3d at 730–33; *see also Kumar*, 2025 WL 3204724, at *8 (adopting *Nguyen*'s reasoning); *Arenado-Borges*, 2025 WL 3687518, at *6 (same).

2. Petitioner is entitled to notice and an opportunity to be heard in reopened removal proceedings before any third county removal.

Petitioner requests an order enjoining the Government from removing him to any third country (including Canada) without notice and a meaningful opportunity to be heard in reopened removal proceedings. Dkt. No. 20 at 28–29, 31. Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply both with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 2025 WL 3204724, at *2 (explaining such designations "are subject to the same mandatory

ORDER ON HABEAS PETITION - 14

protections that exist in removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Id.*; *see also Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply … for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."); *Ibarra-Perez v. United States*, 154 F.4th 989, 995 (9th Cir. 2025) (same).

The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened … because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an IJ. *Nguyen*, 796 F. Supp. 3d at 739; *Aden*, 409 F. Supp. 3d at 1011; *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Oct. 23, 2025).

Besides arguing that Petitioner's due process claim is barred by his membership in the *D.V.D.* class, the Government provides no response to Petitioner's contention that he is entitled to have his fear of removal to Canada reviewed by an IJ in reopened removal proceedings.

Consistent with the reasoning in *Aden* and the many decisions of this District following *Aden*, the Court will grant Petitioner's request and require that the Government may not seek to remove him to a third country without notifying him and providing a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. §

ORDER ON HABEAS PETITION - 15

1231(b)(3).[4] *Nguyen,* 796 F. Supp. 3d at 727 ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F. Supp. 3d at 1010–1011)); *see also, e.g., Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *6–7 (W.D. Wash. Nov. 17, 2025) (finding "*Aden* remains persuasive today" and adopting its holding); *Yousufi v. Hermosillo*, No. 2:25-CV-2098, 2026 WL 482416, at *3 (W.D. Wash. Feb. 20, 2026) (adopting reasoning of *Aden* and citing cases doing the same); *Ibarra-Perez*, 154 F.4th at 1000 (citing *Aden* favorably). Simply providing Petitioner an interview with a single USCIS officer, without the opportunity to present evidence to an immigration judge bearing on his entitlement to relief from removal, does not satisfy Petitioner's "right to a full and fair hearing," "an impartial decisionmaker," and an "evaluation of the merits of his … particular claim[,]" as due process requires under the circumstances here. *Aden*, 409 F. Supp. 3d at 1010.

      3. <u>The Court denies Petitioner's request for an order enjoining removal to Canada or to any third country.</u>

Petitioner argues that ICE's third-country removal policy is unconstitutionally punitive in violation of his Fifth and Eighth Amendment rights, and he seeks to enjoin the Government from removing him to Canada or to any third country on that basis. Dkt. No. 20 at 31. The Government

---

[4] While Petitioner has filed at least two motions to reopen his removal proceedings, the record does not indicate that an IJ has yet reviewed USCIS's negative fear determination. On March 23, 2026, an IJ denied a motion to reopen filed by Petitioner two weeks earlier, holding that the motion was untimely and failed to meet any exceptions to the applicable 90-day time-bar. Dkt. No. 38-1 (citing 8 C.F.R. § 1003.23(b)). That order does not reference USCIS's fear determination. *Id.* Petitioner's counsel, however, states that Petitioner filed a subsequent motion with the immigration court seeking review of the fear determination. Dkt. No. 40 at 1–2. The record does not indicate whether that motion was granted or, if it was, what the result of the IJ's review was. Consistent with this order, Petitioner may not be removed to Canada until an IJ has reviewed USCIS's negative fear determination in reopened proceedings.

ORDER ON HABEAS PETITION - 16

argues that Petitioner cannot show the policy as applied to him is punitive because the Government is seeking to remove him to Canada, a country where he previously resided and where he has legal residence. Dkt. No. 25 at 13. While Petitioner responds that the Government's process for seeking to remove him to Canada "with little notice" demonstrates the removal's punitive nature (Dkt. No. 34 at 12–14), the Court has now ordered the Government to provide notice and an opportunity for Petitioner to challenge the removal to Canada in reopened removal proceedings. The record does not support that removing Petitioner to his country of legal residence after providing him the constitutionally required process for challenging the removal would constitute "punitive banishment." Dkt. No. 20 at 21.

To the extent Petitioner seeks an order barring his possible removal to some other third county, the Government contends that Petitioner cannot meet his burden to show that the policy is "incapable of any valid application." *Id.* (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982)). As a threshold matter, numerous courts, including this one, have held the Government's policy of removing noncitizens to third countries without notice or an opportunity to be heard is unconstitutional. *See, e.g.*, *Kumar*, 2025 WL 3204724, at *6; *Nguyen*, 796 F. Supp. 3d at 735 (collecting cases). The Government does not address this growing body of legal authority, nor does it dispute the underlying factual allegations supporting it.

Although the Court stands by its prior conclusion (unrebutted here) that the Government violates due process requirements when removing noncitizens to third countries without notice, it nonetheless denies Petitioner's request for a broad permanent injunction against *any* third-country removal. This order requires the Government to provide Petitioner with due process in effectuating his removal to Canada or any future third-country removal. As such, on this record, it is not clear to the Court that additional injunctive relief is necessary to prevent irreparable injury at this time.

ORDER ON HABEAS PETITION - 17

*See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (discussing standard for permanent injunctive relief); *cf. Kumar*, 2025 WL 3204724, at \*9 (enjoining third-country removal where petitioner was issued a notice that ICE intended to remove him to a third country where he would likely face persecution).

### III.  CONCLUSION

Petitioner's amended habeas petition (Dkt. No. 20) is GRANTED in part and DENIED in part.  The Court ORDERS that:

(1) Before the Government may remove Petitioner to Canada, Petitioner must be given the opportunity to have U.S. Citizenship and Immigration Services' negative fear determination reviewed by an immigration judge in reopened removal proceedings under 8 U.S.C. § 1231(b)(3).  Unless an immigration judge has already granted Petitioner's motion to reopen for this purpose, the Government must move to reopen his removal proceedings if it intends to continue pursuing removal to Canada.

(2) If the Government intends to proceed with removing Petitioner to another third country, it must similarly provide him with written notice of its intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

(3) Any further relief requested in the amended petition is DENIED.

Dated this 5th day of May, 2026.

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 18